UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                         :
MIRIAM FREIER                            :   Case No. 14-CV-9623 (RA)
                                         :
                    Plaintiff,           :
      --and--                              :
                                         :
VERTICAL CAPITAL, LLC; BRETT GRAHAM;  :
and KEM BLACKER
                                         :
                    Defendants.    :
-----------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION, AND FOR ATTORNEYS' FEES AND COSTS

SEWARD & KISSEL LLP
ONE BATTERY PARK PLAZA
NEW YORK, N.Y. 10004

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

Amamprop Ltd. v. Indiabulls Fin. Servs.,
   No. 10 Civ. 1853, 2011 U.S. Dist. LEXIS 27035 (S.D.N.Y. Mar. 16, 2011)..................12

Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,
   421 U.S. 240, 258-59 (1975) ...........................................................................................12

Bensadoun v. Jobe-Riat,
   316 F.3d 171 (2d Cir. 2003)..............................................................................................8

Browning Debenture Holders' Committee v. DASA Corp.,
   560 F.2d 1078 (2d Cir. 1977)..........................................................................................11

Bulkenstein v. Taptu, Inc.,
   No. 14 Civ. 1812, 2014 U.S. Dist. LEXIS 144159 (S.D.N.Y. Oct. 9, 2014) ....................8

Circuit City Stores, Inc. v. Adams,
   532 U.S. 105 (2001) ..........................................................................................................7

Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,
   58 F.3d 16 (2d Cir. 1995)..................................................................................................9

Dean Witter Reynolds Inc. v. Byrd,
   470 U.S. 213 (1985) ........................................................................................................11

Desiderio v. NASD,
   191 F.3d 198 (2d Cir. 1999)..............................................................................................9

DuBois v. Macy's East Inc.,
   338 Fed. Appx. 32 (2d Cir. 2009)......................................................................................8

Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,
   815 F.2d 840 (2d Cir. 1987)..........................................................................................7, 8

Gilmer v. Interstate/Johnson Lane Corp.,
   500 U.S. 20 (1991) ..........................................................................................................10

Gold v. Deutsche Aktiengesellschaft,
   365 F.3d 144 (2d Cir. 2004)..............................................................................................8

Gross v. FBL Fin. Servs., Inc.,
   557 U.S. 167 (2009) ........................................................................................................10

Hughes, Hooker & Co. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc.,
    No. 04 Civ. 1859, 2005 U.S. Dist. LEXIS 11381 (S.D.N.Y. June 9, 2005) .................... 11

James v. Conceptus, Inc.,
    851 F. Supp. 2d 1020 (S.D. Tex. 2012) ................................................................ 11

Khazin v. TD Ameritrade Holding Corp.,
    14-1689, 2014 U.S. App. LEXIS 23098 (3d Cir. Dec. 8, 2014) ................................ 11

McAllister Bros., Inc. v. A & S Transp. Co.,
    621 F.2d 519 (2d Cir. 1980) .................................................................................. 7

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1 (1983) .................................................................................................. 7

Murray v. UBS Sec., LLC,
    No. 12 Civ. 5914, 2014 U.S. Dist. LEXIS 9696 (S.D.N.Y. Jan. 27, 2014) ............... 10, 11

Oldroyd v. Elmira Savings Bank, FSB,
    134 F.3d 72 (2d Cir. 1997) .................................................................................... 9

Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela,
    991 F.2d 42 (2d Cir. 1993) .................................................................................... 8

Reynolds v. de Silva,
    No. 09 Civ. 9218, 2010 U.S. Dist. LEXIS 18040 (S.D.N.Y. Feb. 24, 2010) ................ 10

Ruhe v. Masimo Corp.,
    SACV 11-00734-CJC, 2011 U.S. Dist. LEXIS 104811
    (C.D. Cal. Sept. 16, 2011) .................................................................................... 10

**FEDERAL STATUTES**

9 U.S.C. §1, *et seq*. .................................................................................................. 1, 7

9 U.S.C. § 2 .............................................................................................................. 7

9 U.S.C. § 3 .............................................................................................................. 11

9 U.S.C. § 4 .............................................................................................................. 7

15 U.S.C. §78u-6 ...................................................................................................... 7, n.3, 10

18 U.S.C. § 1514A(a) ................................................................................................ 10, n.4

18 U.S.C. § 1514A(e) ................................................................................................ 10, n.4

Defendants Vertical Capital, LLC ("Vertical"), Brett Graham ("Graham"), and Kem Blacker ("Blacker") (collectively, the "Defendants"), by their attorneys, Seward & Kissel LLP, respectfully submit this memorandum of law in support of Defendants' motion to compel arbitration and to stay this action pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §1, *et seq.* (the "FAA") and for attorneys' fees and costs due to Plaintiff's bad faith.

## PRELIMINARY STATEMENT

Plaintiff Miriam Freier's ("Plaintiff" or "Freier") salacious and meritless complaint was filed in this Court, and not in arbitration as Freier had expressly agreed, as part of a malicious plan to harass Defendants and damage their reputation. As set forth below, her plan included conduct designed to deceive the Court, as she attaches a draft separation agreement from Vertical which she has stripped of the language "For Settlement Discussion Purposes Only. Off the Record, Without Prejudice and Not To Be Disclosed to Any Third Parties" that was included in the original, and cites to non-existent language in the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. 111-203, 124 Stat. 1376 ("Dodd-Frank Act") to support her claim. Moreover, upon commencing employment with Vertical, Freier entered into an employment agreement dated June 20, 2013 (the "Employment Agreement") that contained a broad arbitration clause, requiring all disputes arising out of the Employment Agreement or the terms and conditions of her employment to be arbitrated before JAMS. She now ignores that language.

In November 2014, Vertical and Freier had numerous discussions about the terms of her mutually-agreed separation, culminating in an agreement in principle reflected in the terms of a draft separation agreement provided to Freier before Thanksgiving. Just a few days later, in an ill-advised attempt to gain leverage in her separation negotiations, she rejected the previously-agreed upon package, demanded an extortionate sum, and threatened to disclose confidential

1

Vertical information and interfere with its client relationships if Vertical did not agree. A few days after Vertical declined to entertain her unreasonable demands, Freier filed this action claiming she is a whistleblower protected under the anti-retaliation provisions of the Dodd-Frank Act and entitled to severance under the Employment Agreement.

Freier should be compelled to arbitrate her claims. There is no dispute that she agreed to the terms of the Employment Agreement, which she attaches to the Amended Complaint and on which she relies for her breach of contract claim. Her whistleblower and breach of contract claims fall squarely within the scope of the Employment Agreement's broad arbitration clause. Nor is there any basis to preclude arbitration of her statutory claim.

Instead, it is apparent that Freier's willful disregard for her agreement to arbitrate is part of a futile, bad-faith exercise in harassment in furtherance of her malicious plan to smear Defendants' reputation. Upon receipt of the draft separation agreement, and over the course of the next few days, Freier and her counsel exchanged numerous emails over Vertical's email systems, which Freier was well aware offered no privacy and were subject to monitoring and review in accordance with Vertical's Employee Handbook and Compliance Manual. Freier also forwarded certain of communications with counsel on to a third party. In these emails, Freier's counsel wrote "Let's fuck with [Brett Graham] and threaten to expose him," and berated Freier for "weaken[ing] the surprise punch" after Freier exchanged emails with Graham that hinted of her intentions. Freier and her counsel then executed on their plan, demanding an outrageous payment and "threaten[ing] to expose" Defendants. When Vertical refused to give in to Freier's demands, Freier filed the initial complaint in this action on December 5, 2014 (which was never served) and took her story to *The New York Times*, which published an article on December 6, 2014, parroting her meritless claims.

A few weeks later, Freier filed the Amended Complaint, containing additional scandalous and false allegations concerning the Defendants. Shockingly, the Amended Complaint also: (1) attaches confidential, internal Vertical documents that Freier stole from the firm; (2) attaches as an Exhibit a copy of the draft separation agreement which was expressly labeled "For Settlement Discussion Purposes Only. Off the Record, Without Prejudice and Not To Be Disclosed to Any Third Parties," which has been altered to remove that endorsement without notifying the Court she had done so; and (3) references non-existent citations for language which Freier falsely claims exists in the Dodd-Frank Act's whistleblower provisions. Not only should this Court short-circuit Freier's ill-advised publicity stunt, compel arbitration as the parties originally agreed, and stay this action, but it should also award Defendants their attorneys' fees incurred in connection with the instant motion based on Freier's blatant bad faith.

## STATEMENT OF FACTS[1]

### I. The Parties

Vertical is a registered investment advisor located in New York, New York. Am. Compl. ¶ 6; see also Blacker Aff. ¶ 10. Graham and Blacker are two of the four members of Vertical. Id. ¶ 2. Since inception, Graham has been Vertical's Chief Investment Officer. Blacker serves as Vertical's Chief Compliance Officer. Id. Until recently, Freier was employed as Vertical's Director of Marketing & Investor Relations. Am. Compl. at ¶ 9.

### II. Freier's Employment Agreement With Vertical

Freier commenced employment with Vertical in or about August 2013 pursuant to the terms of the Employment Agreement. See Am. Compl. Ex. A; Blacker Aff. ¶ 6. The Employment Agreement, dated June 20, 2013, was countersigned by Freier on June 24, 2013.

---

[1] References are to the Affidavit of Kem Blacker sworn to January 9, 2015 ("Blacker Aff.") and the Affidavit of Julia C. Spivack, Esq. sworn to January 9, 2015 ("Spivack Aff.").

3

Id. Freier had negotiated the terms of the Employment Agreement in consultation with counsel, resulting in revisions to an agreement dated June 18, 2013. Blacker Aff. ¶¶ 3-5. Both the June 18 document and the final June 20 agreement that Freier signed contained an arbitration clause. Id. ¶¶ 3, 5.

The parties' agreement to arbitrate is contained in paragraph 14 of the Employment Agreement, entitled "Governing Law," which states that:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to principals of conflicts of laws. If any dispute should arise concerning this Agreement [ ] otherwise relating in any way to the terms and conditions of [Plaintiff's] employment, including any statutory claim of discrimination, the parties agree to submit the dispute to arbitration before a panel of three (3) neutral arbitrators at JAMS in New York, New York pursuant to JAMS' Comprehensive Arbitration Rules and Procedures. Each party shall bear its own costs in connection with an arbitration under this paragraph 14. For injunctive relief, it is agreed that any court of competent jurisdiction may also entertain an application by either party. The parties further agree that no demand for punitive damages shall be made in any arbitration proceeding. Any award of the arbitrators shall be final and binding, subject only to such right of review that may lie under applicable federal or state law.

Am. Compl. Ex. A at ¶ 14.

The Employment Agreement further provides that it

> contains the entire understanding between the parties on the subjects covered here and supersedes all prior agreements, arrangements and understandings, whether written or oral, regarding the subjects covered here. You acknowledge that you have not relied on any statements, representations or promises not specifically contained in this Agreement. This Agreement may not be changed, or any of its provisions waived, orally, but only in writing signed by both parties.

Am. Compl. Ex. A at ¶ 20.

As part of the terms of her employment, Freier was required to comply with internal Vertical policies and procedures, including Vertical's Employee Handbook and

4

Compliance Manual. Blacker Aff. ¶ 8. Among other things, the Employee Handbook advises employees that Vertical email systems are intended for business use, that all emails are subject to monitoring and review by Vertical as part of its compliance policies, and that employees have no expectation of privacy in their email communications. Id. ¶ 9. The Compliance Manual contains similar provisions. Freier acknowledged her receipt of the Employee Handbook on August 5, 2013, and most recently acknowledged receipt of the Compliance Manual as of June 20, 2014. Id. ¶ 9-10.

### III. Freier Manufactures the Instant Action To Harass Vertical, Graham and Blacker

In or about November 2014, Freier and Vertical had conversations about a mutually agreed end to her employment, and ultimately came to an agreement in principle as to the material terms of Freier's separation, including substantial cash payments and a working notice period. Blacker Aff. ¶ 11. Blacker provided Freier with a draft separation agreement reflecting these agreed-upon terms on Wednesday, November 26, 2014 ("Separation Agreement"). Id. ¶ 12. Counsel for Vertical simultaneously provided a copy of the Separation Agreement to Freier's counsel, Jonathan Sack. Spivack Aff. ¶ 2. Notably, the Separation Agreement was endorsed with a stamp on the top left corner of the first page that read "For Settlement Discussion Purposes Only. Off the Record, Without Prejudice and Not To Be Disclosed to Any Third Parties" (the "Endorsement"). Blacker Aff. ¶ 17, Spivack Aff. ¶¶ 3.

Unbeknownst to Vertical at the time, in the days following receipt of the Separation Agreement, Freier, Jonathan Sack, and other attorneys at the firm Sack & Sack exchanged numerous emails over Vertical's email systems (i.e., sent to and from Freier's Vertical email account). Freier also forwarded certain of her exchanges with counsel to third parties not associated with the Sack & Sack firm. These emails were stored on and recovered from Vertical's computer systems. Blacker Aff. ¶ 14. In these emails, Freier's counsel wrote

5

"Let's fuck with [Brett Graham] and threaten to expose him," (Id., Ex. I) and berated Freier for "weaken[ing] the surprise punch" and enabling Vertical to be "prepare[d] . . . for my assault" after Freier exchanged emails with Graham. Id., Ex. J.

On Monday, December 1, 2014, Freier's counsel formally rejected the Separation Agreement and countered with a non-negotiable, outrageous and completely unacceptable demand, laced with implicit threats of interference with Vertical's investor relationships, business and goodwill if Vertical did not accede by 9 p.m. the next day. Am. Compl. ¶ 52, Ex. F; Spivack Aff. ¶ 4, Ex. B.

On the morning of December 3, 2014, Vertical notified Freier by letter that it was terminating her employment, effective immediately. Am. Compl. Ex. F. On December 5, 2014, Plaintiff filed a complaint alleging two claims for relief, both arising out of her employment with Vertical: (1) "Violation of Whistleblower Protection Under Dodd-Frank", and (2) breach of contract, asserting that she is owed severance payments under the Employment Agreement. On December 6, 2014, an article appeared in *The New York Times* referencing the complaint and containing quotes from Freier and Sack. Spivack Aff. ¶ 6, Ex. B.

On December 19, 2014, Freier filed the Amended Complaint, which continues to assert the same two causes of action, yet includes additional factual allegations. It also attaches or quotes from certain documents, including (1) internal, confidential Vertical documents that Freier was required to return upon the cessation of her employment, namely, an internal memorandum and talking points for communications with investors; (2) the Employment Agreement; and (3) a copy of the draft Separation Agreement which has been altered to remove the Endorsement without any indication that the document had been modified from the original. See generally, Am. Compl. ¶¶ 38,40, Exs. A, C-D; Spivack Aff. ¶ 7; Blacker Aff. ¶ 16. In

addition, the Amended Complaint references a quote and a citation purporting to reference provisions of the Dodd-Frank Act as the basis for Freier's whistleblower claim which simply do not exist in the relevant provisions.[2]  Spivack Aff. ¶ 10, Ex. F.

## ARGUMENT

### I. The Court Should Compel Arbitration Because Plaintiff's Claims Fall Squarely Within The Arbitration Clause Of Her Employment Agreement

The Federal Arbitration Act, 9 U.S.C. §1, *et seq.* ("FAA") governs arbitration provisions contained in employment contracts. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 199 (2001). Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA authorizes "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate . . . [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. To effectuate the strong federal policy favoring arbitration, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

The Second Circuit has enumerated the following four factors to be considered when deciding whether to compel arbitration under the FAA: (1) whether the parties agreed to arbitrate; (2) whether the asserted claims fall within the scope of the arbitration agreement; (3) if federal statutory claims are asserted, whether Congress intended the plaintiff's statutory claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims in the case

---

[2]  Plaintiff purports to quote the text of the statute in the Amended Complaint (see ¶64), yet no such passage exists in 15 U.S.C. §78u-6. Spivack Aff. ¶ 10, Ex. F. Indeed, a full-text search of the Dodd-Frank Act yielded no results of Plaintiff's quotation. Id. Nor is there a "Section F" under Title IX of Public Law 111-203 entitled "Protections for Whistleblowers and Employees." Id. ¶ 9, Ex. E. Rather, Subtitle F of Title IX relates to Improvements to the Management of the Securities and Exchange Commission. Id. We assume that Plaintiff intends to assert a claim under Section 922 of the Dodd-Frank Act, codified at 15 U.S.C. §78u-6.

7

are arbitral, whether to stay the balance of the proceedings pending arbitration. See Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987). As set forth below, because all of the Genesco factors are met, Plaintiff's claims must be arbitrated.

A standard similar to that applicable to a motion for summary judgment will apply on a motion to compel arbitration. See Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). Thus, the moving party must show, by a preponderance of the evidence, that an agreement to arbitrate has been made. Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F.2d 42, 46 (2d Cir. 1993). Then, the "party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." DuBois v. Macy's East Inc., 338 Fed. Appx. 32, 33 (2d Cir. 2009).

### A. The Parties Agreed To Arbitrate

Courts employ "ordinary principles of contract and agency" under state law to determine whether the parties have agreed to arbitrate. McAllister Bros., Inc. v. A & S Transp. Co., 621 F.2d 519, 524 (2d Cir. 1980). Here, there is no dispute that Plaintiff executed the Employment Agreement which contains an arbitration clause, and thus is presumed to know its contents and accepted them. See Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) (under New York law, "a party who signs or accepts a written contract is conclusively presumed to know its contents and to assent to them" (internal citations and quotations omitted)); Genesco, 815 F.2d at 845 (same). Courts routinely compel arbitration based on clauses contained in employment agreements. See, e.g., Bulkenstein v. Taptu, Inc., No. 14 Civ. 1812, 2014 U.S. Dist. LEXIS 144159, *5-6 (S.D.N.Y. Oct. 9, 2014) (granting employer's motion to compel arbitration of federal and state anti-discrimination law claims where employment agreement stated "You and the Company shall submit to mandatory and exclusive binding

8

arbitration of any controversy or claim arising out of, or relating to, this Agreement or any breach hereof...").

Nor can Plaintiff credibly assert that the Employment Agreement is somehow invalid, incomplete or otherwise ineffective. Freier successfully negotiated changes to the document with the advice of counsel, had ample time to review and agree to its terms and now relies upon the Employment Agreement and its validity to support her breach of contract claim. See Blacker Aff. ¶ 4; Am. Compl. Ex. A.

### B. Both Of Plaintiff's Causes of Action Fall Within The Scope Of The Arbitration Clause

The arbitration clause within the Employment Agreement is broad, encompassing "any dispute... concerning this Agreement [ ] or otherwise relating in any way to the terms and conditions of [Plaintiff's] employment, including any statutory claims for discrimination." Am. Compl. Ex. A at ¶ 14. This is "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability." Oldroyd v. Elmira Savings Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1997) (agreement stated "Any dispute, controversy or claim arising under or in connection with this Agreement shall be settled exclusively by arbitration. . . ."); see also Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995) (where arbitration clause required "any claim or controversy arising out of or relating to the agreement," to be submitted to arbitration "there arises a presumption of arbitrability").

Plaintiff's two causes of action – retaliation under the whistleblower protection provisions of the Dodd-Frank Act and breach of contract – concern the Employment Agreement or "otherwise relate[] in any way to the terms and conditions of [Plaintiff's] employment, including any statutory claim of discrimination" and thus fall squarely within the scope of the expansive arbitration clause. Courts will find a broad arbitration clause such as this one

9

encompasses Dodd-Frank whistleblower retaliation claims and breach of contract claims. See, e.g., Murray v. UBS Sec., LLC, No. 12 Civ. 5914, 2014 U.S. Dist. LEXIS 9696, *33 (S.D.N.Y. Jan. 27, 2014) (compelling arbitration of Dodd-Frank whistleblower retaliation claims); Reynolds v. de Silva, No. 09 Civ. 9218, 2010 U.S. Dist. LEXIS 18040, *9-11 (S.D.N.Y. Feb. 24, 2010) (compelling arbitration of breach of contract as well as other statutory employment claims).

### C. Congress Did Not Intend Plaintiff's Statutory Claim To Be Nonarbitrable

"[A]rbitration agreements are enforceable with regard to statutory claims, 'unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue [as indicated] in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes.'" Desiderio v. NASD, 191 F.3d 198, 204 (2d Cir. 1999) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)). While Plaintiff purports to assert a statutory claim under the whistleblower provisions of the Dodd-Frank Act, 15 U.S.C. §78u-6, nothing in the text of the applicable provisions of that law prohibits arbitration of a whistleblower retaliation claim.[3] Nor is there any indication that Congress intended to preclude arbitration of such claims. Indeed, the fact that Congress simultaneously included anti-arbitration provisions in the Dodd-Frank Act's amendments to the Sarbanes-Oxley whistleblower protections, yet expressly declined to do so in the newly-minted whistleblower protections contained in 15 U.S.C. §78u-6, forcefully demonstrates that its omission was intentional.[4] See Gross v. FBL Fin. Servs., Inc., 557 U.S.

---

[3] As noted above, we are assuming that Plaintiff seeks relief under Section 922 of the Dodd-Frank Act, 15 U.S.C. §78u-6.

[4] Congress expressly provided in the Dodd-Frank amendments to the Sarbanes-Oxley Act that pre-dispute arbitration agreements could not be enforced to the extent they purport to require the arbitration of Sarbanes-Oxley whistleblower claims. See 18 U.S.C. § 1514A(e). Plaintiff does not and cannot assert claims under Sarbanes-Oxley, as Vertical is not a covered employer. Id. at §1514A(a) (defining covered employers). Even if it were (and it is

10

167, 174 (2009) ("When Congress amends one statutory provision but not another, it is presumed to have acted intentionally").

Indeed, all the courts that have confronted this question – including Judge Failla's 2014 decision in Murray v. UBS Sec., LLC – have confirmed that an employer may compel arbitration of Dodd-Frank whistleblower retaliation claims. See, e.g., Khazin v. TD Ameritrade Holding Corp., 14-1689, 2014 U.S. App. LEXIS 23098, *16 (3d Cir. Dec. 8, 2014); Murray, 2014 U.S. Dist. LEXIS 9696 at *33; Ruhe v. Masimo Corp., SACV 11-00734-CJC, 2011 U.S. Dist. LEXIS 104811, *12-13 (C.D. Cal. Sept. 16, 2011); accord James v. Conceptus, Inc., 851 F. Supp. 2d 1020, 1029 (S.D. Tex. 2012) (holding Dodd-Frank's anti-arbitration amendments to Commodity Exchange Act and the Sarbanes-Oxley Act did not extend to antiretailiation provisions of False Claims Act). Thus, there is no basis to exclude Plaintiff's whistleblower claims from arbitration.

### D.   The Court Must Stay This Case In Favor of Arbitration

Where, as here, the parties have agreed in writing to arbitrate an issue or issues, and the claims are arbitrable, the district court must stay the proceedings. Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213 (1985); see 9 U.S.C. § 3 ("stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). The FAA leaves no discretion with the district court in the matter. Id.; see also Hughes, Hooker & Co. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc., No. 04 Civ. 1859, 2005 U.S. Dist. LEXIS 11381, *10 (S.D.N.Y. June 9, 2005) ("a district court has no discretion to deny a stay if a valid agreement to arbitrate exists and the claims at issue come within the scope of that agreement"). Therefore, Plaintiff should be compelled to arbitrate all of her claims, and this action must be stayed.

---

not), Plaintiff has not exhausted her administrative remedies and thus has no standing to bring such a claim here. See, e.g., Murray, 2014 U.S Dist. LEXIS 9696 at *27.

11

## II. The Court Should Grant Defendants Their Attorneys' Fees and Costs Due To Plaintiff's Bad Faith

This Court has the inherent power to award attorneys' fees where "the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Amamprop Ltd. v. Indiabulls Fin. Servs., No. 10 Civ. 1853, 2011 U.S. Dist. LEXIS 27035, *7 (S.D.N.Y. Mar. 16, 2011) (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975) (internal quotations omitted). A claim will be deemed brought in bad faith when it is "'entirely without color and has been asserted wantonly, for purposes of harassment or delay or for other improper purposes.'" Id. at 8 (quoting Browning Debenture Holders' Committee v. DASA Corp., 560 F.2d 1078, 1088 (2d Cir. 1977)). As demonstrated by the series of events leading up to the filing of the Amended Complaint, it is apparent that Plaintiff's decision to file this action in this Court and not in arbitration -- as she had expressly agreed -- is a product of her bad faith and done for the express, improper purpose to harass and inconvenience Defendants and sully their reputation. As set forth here, Plaintiff has no colorable grounds to avoid arbitrating her claims. The Amended Complaint is simply a vehicle for Plaintiff to, in the words of her counsel, "fuck with [Defendants]" and "expose" them by making salacious, false allegations, display confidential, internal documents that she stole from Vertical, and force Defendants to expend resources to compel arbitration. Plaintiffs' claims are meritless, Plaintiff misrepresents the law under which she seeks relief, and, significantly, seeks to mislead this Court by stripping the draft Separation Agreement (which she gratuitously attaches to the Amended Complaint) of the Endorsement without informing the Court of such alteration. Defendants should be awarded their attorneys' fees and costs incurred in compelling arbitration of Plaintiff's claims. See Amamprop Ltd., 2011 U.S. Dist. LEXIS 27035 at *9-10 (awarding attorneys' fees and costs under court's inherent power against party who opposed motion to compel in bad faith).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request this court (1) compel Plaintiff to arbitrate all of her claims, (2) stay this action pending arbitration, (3) award Defendants their reasonable attorneys' fees and costs in connection with the instant motion, and (4) award such other, further, and different relief as the Court deems just and proper.

New York, New York
January 9, 2015

SEWARD & KISSEL LLP

By: /s/ Mark J. Hyland
Mark J. Hyland
Rita M. Glavin
Julia C. Spivack
One Battery Park Plaza
New York, New York 10004
(212) 574-1500

*Attorneys for Defendants Vertical Capital, LLC, Brett Graham and Kem Blacker*

13