# Exhibit B

| | |
|---|---|
| **From:** | Kem Blacker <VERTICAL CAPITAL/FIRST ADMINISTRATIVE GROUP/RECIPIENTS/KBLACKER> |
| **Sent:** | 6/20/2013 7:38:22 PM +00:00 |
| **To:** | 'miriamfreier@yahoo.com' |
| **CC:** | Kem Blacker <kblacker@verticalcapital.com> |
| **Subject:** | offer letter |
| **Attachments:** | Redline.doc; Miriam Freier Employment Agreement (Vertical).DOC |

Miriam, attached is a redline w changes to the letter & a clean execution version.  Let me know when are you available to discuss?



Kind regards, Kem



Kem Blacker

Vertical Capital

212 786 5300 ph

908 578 8660 cell

kblacker@verticalcapital.com


This e-mail and/or attachments may contain privileged, confidential or proprietary information. Unintended recipients should notify the sender immediately and delete. Disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. Brokerage services provided by VCAP Securities LLC. Member FINRA, SIPC. This is neither an offer or recommendation to buy or sell any security or other financial instrument. Email compliance@vcapllc.net with questions regarding this disclosure.

# VERTICAL CAPITAL, LLC

_____

June 18 20, 2013

Ms. Miriam Freier
108 5th Avenue, Apt 7C
New York, New York  10011

Dear Miriam:

       The purpose of this letter is to confirm our agreement (the "Agreement") with respect to the terms of your employment by Vertical Capital, LLC ("Vertical" or the "Company").  It is hereby agreed as follows:

       1.    <u>Employment</u>.  Subject to the terms and conditions of this Agreement, the Company agrees to employ you and you agree to be employed by the Company commencing on or about August 5, 2013.  If you have not joined the Company by that date, this Agreement shall be null and void and of no further effect.  You shall be employed on an at-will basis, meaning that either you or the Company may terminate the employment relationship at any time, for any reason or no reason at all, subject only to the terms of this Agreement, including without limitation the Notice Period described in Section 6 6(a).

       2.    <u>Title and Duties</u>.  You will have the title of director of Marketing & Investor Relations.  In that capacity you shall report to Brett Graham and Kem Blacker, Partners.  Your responsibilities will include, but not be limited to, capital raising, organizing/maintaining a plan and budget relating to capital raising activities, preparing marketing materials (i.e. presentations, one-pagers, and web site material) and preparing RFP responses.  During your employment you shall devote your full business time, attention, energy and best efforts to the business and affairs of the Company and any related funds, entities or companies and you shall not engage in any activity that is harmful to the business, reputation or best interests of the Company or any related funds or entities.  In addition, you agree to adhere to and abide by any and all Company policies and procedures, and all relevant federal, state and self-regulatory laws, rules and regulations, as may be in effect from time to time.

       3.    <u>Compensation</u>. (a) <u>Base Salary</u>.  In consideration of your services, you will be paid a base salary at the rate of two hundred thousand U.S. dollars (US$200,000) annualized, payable in accordance with the Company's normal payroll practices, currently semi-monthly.

       (b)    <u>Discretionary Bonus</u>.  You will be eligible to receive an annual discretionary bonus to be determined in the sole discretion of the Company.  Your receipt of any discretionary bonus for any calendar year is contingent upon your remaining in the active employ of the Company through the date that bonuses are paid in the normal course, generally not later than March 15 in the first quarter of the following calendar year, after the year-end close.  Provided you are in the active employ of the Company on

Ms. Miriam Freier
June ~~18,~~20, 2013
Page 2 of ~~9~~9

the date bonuses are paid in the normal course (regardless of the reason for termination of employment), and have not given notice of your intent to resign, for calendar year 2013, your minimum discretionary bonus shall be $50,000.

        (c)    <u>Withholdings and Deductions</u>.  All payments made under this Agreement by the Company shall be subject to all required federal, state and local withholdings and such deductions as you may instruct the Company to take.

        4.    <u>Benefits</u>.  You will be eligible for employee benefits on the same basis as those benefits are made available to other employees in comparable positions. The Company currently offers group medical and dental coverage in addition to a 401k plan.  There is a mandatory thirty (30) day period before any employee is eligible for medical or dental benefits and a ninety (90) day waiting period for eligibility to participate in the 401k plan.

        5.    <u>Vacation</u>.  You will be eligible for three (3) weeks of paid vacation days, pro-rated for any partial calendar year worked.

        6.    ~~Notice Period~~<u>Termination</u>.  <u>(a)</u> You agree to provide at least thirty (30) days written notice in advance of resigning or retiring from the Company (the "Notice Period").  During the Notice Period, you will continue to be an employee of Vertical and shall remain subject to the terms of this Agreement, and all Vertical policies and procedures.  In no event may you perform services of any kind for any other employer during the Notice Period.  During the Notice Period, Vertical may, in its sole discretion, remove any duties assigned to you, assign you other duties (consistent with your experience), require you to remain away from Vertical's place of business, or waive some or all of the Notice Period and consider your resignation effective immediately, or on some date prior to the expiration of the Notice Period.  During the effective duration of the Notice Period, and provided that you continue to act in a manner consistent with your obligations as an employee of Vertical, you will continue to be paid at your then current base salary and remain eligible to participate in benefit plans for Vertical employees in comparable positions, but you shall not be entitled to any other payments of any kind, including any bonus compensation in Section 3(b) above.

        <u>(b)</u>    <u>If your employment is terminated with Cause (as defined herein) or you resign or give notice of your intent to resign from the Company, you will not be entitled to any further payments of any kind, except for base salary through the effective date of the termination of your employment.  "Cause" shall mean (i) willful or deliberate failure to perform your duties or gross negligence in the performance of your duties; (ii) material breach of the terms of, or representation included in, this Agreement; (iii) dishonesty, willful misconduct or fraud in connection with your employment by the Company, the performance of your duties or in any way related to the business of Vertical including, without limitation, with respect to any representations in this Agreement; (iv) a reportable violation of banking, securities or commodities laws, rules or regulations; (v) conviction or a plea of nolo contendere (or the equivalent) to a felony or any crime involving moral turpitude; (vi) engaging in conduct materially injurious to</u>

Ms. Miriam Freier
June 18,20, 2013
Page 3 of 99

the business, reputation or goodwill of the Company or any of its affiliates; or (vii) violation of applicable policies, practices and standards of behavior.  The Company shall provide you with notice and an opportunity to cure in respect of any act or omission on your part that under (i), (ii) or (vii) it believes constitutes Cause for terminating your employment, provided that in the reasonable good faith judgment of the Company the particular act or omission is susceptible to cure.

(c)     If your employment is terminated by the Company without Cause, you will be entitled to receive your base salary through the effective date of the termination of your employment, but you will not be entitled to any further payments of any kind; provided, however, if such termination is on or after January 1, 2014, you will (i) receive payment of three (3) months of your then current base salary and (ii) be eligible for an additional amount that the Company may decide in its sole discretion, but you understand and acknowledge that the Company has no obligation to pay any such additional discretionary amount.  No payments upon termination of your employment without Cause will be made unless you execute and do not revoke a release in a form satisfactory to the Company and its counsel in favor of it and all related persons and entities from any and all claims relating to your employment or its termination and your continued compliance with the terms and obligations of this Agreement.

7.     Confidential Information.  During the course of your employment you will have access to and come into possession of information of a proprietary or confidential nature relating to the present or future business of the Company, and any affiliated or related entities or funds managed by the Company, as well as from clients or prospective clients of the Company (all of such information hereinafter referred to as "Confidential Information"), the improper use or disclosure of which may potentially violate federal or state law, and harm the Company.  In addition, the value of such information may be destroyed or seriously diminished by any such disclosure.  As such, you agree that at all times during and after your employment at the Company you will hold in the strictest confidence, and will not use, publish or disclose, or permit others to use, publish or disclose, any Confidential Information which you may have acquired by reason of, or in connection with, your employment with the Company.  Notwithstanding the foregoing, nothing herein shall prevent you from disclosing Confidential Information: (a) to the extent required by law provided that you shall immediately notify the Company prior to any such disclosure; (b) with the prior written consent of the Company; or (c) if such information becomes publicly available other than from disclosure by you or anyone acting in concert with you.

For purposes of this Agreement, "Confidential Information" includes, but is not limited to, financial and operational information and data regarding the Company, and its investment vehicles and strategies; client contact, account, and portfolio information; proprietary software, models, processes, discoveries, inventions, know-how, and the like; track record and account performance data; internal analyses, management information reports and worksheets such as marketing and business plans, profit margin studies and compensation; research and portfolio information; Company and fund

Ms. Miriam Freier
June ~~18,~~ 20, 2013
Page 4 of ~~9~~ 9

accounting information, including financial statements of the Company and its affiliated entities; personal information pertaining to current and former employees and officers of the Company and its related entities; and personal and financial information pertaining to the principals of Vertical or their respective family members.

8.      Non-Solicitation.  As part of the consideration for the benefits and consideration paid to you under this Agreement, you agree that during the period of your employment (including any Notice Period), and for a period of twelve (12) months thereafter, you will not, without the prior written consent of the Company, directly or indirectly: (a) solicit any client, limited partner, shareholder or investor of or in any fund or account established or managed by Vertical or any affiliated or related entity (a "Client"), "Prospective Client" (as defined below) or former Client who was a Client within the twelve (12) months prior to your termination for employment; (b) encourage any Client or Prospective Client to turn down, terminate or reduce a business relationship with Vertical or any affiliated or related entity; (c) hire, solicit, recruit, induce, work with, procure or attempt to hire, solicit, recruit, induce or procure, directly or indirectly, any person who is an employee or member of Vertical or any affiliated or related entity and who was such an employee or member at any time during the final year of your employment; (d) assist in hiring any such person by any other individual, sole proprietorship, company, partnership, broker-dealer, investment adviser, investment company, hedge fund, bank, mutual fund or other enterprise; or (e) encourage any such person to terminate his or her employment or membership with Vertical or any affiliated or related entity.

For purposes of this Section 8, "Prospective Client" shall mean any person or entity that has received an offering memorandum or marketing materials, including, but not limited to any PowerPoint presentations, Word documents, monthly or quarterly letters, or similar marketing related correspondence with respect to Vertical or any affiliated or related entity, provided that, if such Prospective Client has not invested or signed any document indicating an intention to invest with Vertical (or any affiliated or related entity) within six (6) months following Employee's cessation from employment for any reason, such person or entity shall no longer be considered a Prospective Client.

9.      Non-Competition.  As part of the consideration for the benefits and consideration paid to you under this Agreement, you agree that during the period of your employment (including any Notice Period), and for a period of three (3) months thereafter, you will not, without the prior written consent of the Company, directly or indirectly, invest in or otherwise acquire an interest in, render any service or advice to or in connection with any person or managed account for, manage, become affiliated or associated with, operate or be employed in any capacity by any person, bank, investment bank, broker-dealer, firm, corporation, partnership, fund, limited liability company, business enterprise or other entity (whether as an employee, director, officer, partner, investor, advisor, consultant or otherwise) that (a) engages or plans to engage in asset management activities of the types engaged in or contemplated by the Company or any of its affiliates or investment vehicles during the course of your employment or (b)

Ms. Miriam Freier
June ~~18,~~20, 2013
Page 5 of ~~9~~9

otherwise competes or plans to compete with the Company or any of its affiliates or related investment vehicles.

    10. <u>Remedies</u>.  You acknowledge and agree that your services are of a unique nature with broad access to Confidential Information including but not limited to client information, plans, strategies and methods of operations, and that as such, it is fair and reasonable in order to protect the good will, business, operations, assets and reputation of the Company that you make the covenants and undertakings set forth in Sections ~~6,~~6(a), 7, 8 and 9 of this Agreement.  Furthermore, you agree that if you breach or attempt to breach or violate any of the foregoing provisions, the Company will be irreparably harmed and monetary damages will not provide an adequate remedy. Accordingly, it is agreed that the Company may apply for and shall be entitled to temporary, preliminary and permanent injunctive relief (without the necessity of posting a bond or other security) in order to prevent breach of this Agreement or to specifically enforce the provisions thereof, and you hereby consent to the granting of such relief.  The Company shall not have to prove the inadequacy of the available remedies at law or actual damages.  It is understood that any such injunctive remedy shall not be exclusive or waive any rights to seek other remedies at law or in equity.  The parties hereto further agree that the covenants and undertakings as set forth in this Agreement are reasonable in light of the facts as they exist on the date hereof.  However, if at any time, a court having jurisdiction over this Agreement shall determine that any of the subject matter or duration is unreasonable in any respect, it shall be reduced, and not terminated, as such court determines may be reasonable.

    11. <u>Representations</u>.  You represent and warrant that you are not in breach of any agreement requiring you to preserve the confidentiality of any information, client lists, trade secrets or other confidential information or any agreement not to compete, solicit clients or employees of, or interfere with, any prior employer, and that neither the execution of this Agreement nor the performance by you of your obligations hereunder will conflict with, result in a breach of, or constitute a default under, any agreement or policy to which you are a party or to which you may be subject, including any garden leave or notice requirement prior to resigning your prior employment.  You further represent that you have not taken and will not take any confidential information from any prior employer and will not use any such information in performing your obligations hereunder but instead will rely on your generalized knowledge and skill in performing your services hereunder.  You represent that: (a) you are not currently and have never been the subject of any investigation by any prior employer or a party in any securities-related or banking litigation or arbitration proceeding; (b) you are not the subject or target of any pending investigation, charge or complaint before a securities regulatory or self-regulatory organization, grand jury or any other forum; (c) you have never been fined, sanctioned or otherwise found to have violated any securities related regulation by any governmental agency or self-regulatory organization, whether or not such finding resulted in statutory disqualification; and (d) you have disclosed any material information to Vertical regarding your personal investments, professional affairs

Ms. Miriam Freier
June ~~18,~~20, 2013
Page 6 of ~~9~~9

or any legal or regulatory matter of which you are aware that, if publicly disclosed hereafter, would adversely reflect on the business, reputation or goodwill of Vertical.

12.  <u>Return of Company Property</u>.  You agree to deliver to the Company promptly on termination of your employment, or at any other time upon request by the Company, all property and equipment of the Company of any kind in your possession including, but not limited to, computer equipment (hardware and software), identification cards, credit cards, cellular telephones, BlackBerry, iPhone or similar device, magnetic key cards and the like, in addition to any and all documents (however stored) related to the business of the Company.

13.  <u>Notice</u>.  All notices pursuant to this Agreement shall be in writing delivered by hand to the other party or via a recognized overnight delivery service (e.g., FedEx), addressed as follows:

If to you:  At the address set forth on page 1

If to the Company  Vertical Capital, LLC
437 Madison Avenue, 39th Floor
New York, New York  10022
Attn.: Kem Blacker, Partner

or to such other address as either party shall have furnished to the other in writing in accordance herewith.  Notice shall be effective when delivered by hand or the business day following the date when placed in the custody of a recognized overnight courier service for next day business delivery, properly addressed.

14.  <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to principles of conflicts of laws.  If any dispute should arise concerning this Agreement, the interpretation of this Agreement or otherwise relating in any way to the terms and conditions of your employment, including any statutory claim of discrimination, the parties agree to submit the dispute to arbitration before a panel of three (3) neutral arbitrators at JAMS in New York, New York pursuant to JAMS' Comprehensive Arbitration Rules and Procedures.  Each party shall bear its own costs in connection with an arbitration under this paragraph 14.  For injunctive relief, it is agreed that any court of competent jurisdiction may also entertain an application by either party.  The parties further agree that no demand for punitive damages shall be made in any arbitration proceeding.  Any award of the arbitrators shall be final and binding, subject only to such right of review that may lie under applicable federal or state law.

15.  <u>No Waiver</u>.  No failure by either party at any time to give notice of any breach by the other party, or to require compliance with, any condition or provision of this Agreement shall be deemed a waiver of a similar or dissimilar provision or condition at the time or at any prior or subsequent time.

Ms. Miriam Freier
June ~~18,~~ 20, 2013
Page 7 of ~~9~~ 9

16.   <u>Severability</u>.   In the event that any provision or term of this Agreement is held to be invalid, prohibited or unenforceable for any reason, such provision or term shall be deemed severed from this Agreement, without invalidating the remaining provisions, which shall remain in full force and effect.  If at any time a court or other body having jurisdiction over this Agreement shall determine that any of the subject matter or duration is unreasonable in any respect, it shall be reduced and not terminated, as such court or body determines may be reasonable.

17.   <u>Non-Disclosure</u>.   You agree to keep this Agreement confidential and not disclose its terms to any third parties unless required to do so by law or regulation, without the prior written consent of the Company.   You may, however, disclose the details of your employment and compensation arrangements to your immediate family and to your tax, accounting and legal advisors, provided that you secure the agreement of such individuals to maintain the confidentiality of this Agreement; and you may disclose your obligations to Vertical as set forth in Sections ~~6,~~ 6(a), 7, 8 and 9 to any potential future employer or business partner.

18.   <u>Work Eligibility</u>.   This Agreement is contingent upon proof of your eligibility to work in the United States and a satisfactory background check.

19.   <u>Assignment</u>.   This Agreement and all rights and obligations hereunder shall be binding upon and shall inure to the benefit of your heirs, executors, representatives and administrators and any successors in interest which may acquire or succeed to all or substantially all of the business and assets of the Company by any means or its assigns.  Because of the personal nature of the services to be rendered by you, you may not assign your rights or obligations under this Agreement, without the prior written consent of the Company.

20.   <u>Entire Agreement</u>.   This Agreement contains the entire understanding between the parties on the subjects covered here and supersedes all prior agreements, arrangements and understandings, whether written or oral, regarding the subjects covered here.  You acknowledge that you have not relied on any statements, representations or promises not specifically contained in this Agreement.   This Agreement may not be changed, or any of its provisions waived, orally, but only in writing signed by both parties.

Ms. Miriam Freier
June ~~18,~~ 20, 2013
Page 8 of ~~9~~ 9

   Kindly indicate your acceptance of this Agreement by signing and returning a copy of this Agreement to the undersigned by June 21, 2013.  If a signed Agreement is not received by the undersigned as of this date, this Agreement and all terms thereof shall be null and void in its entirety.


     Very truly yours,

     VERTICAL CAPITAL, LLC


     By: _____
       Kem Blacker
       Partner



ACCEPTED AND AGREED TO:

_____
Miriam Freier

_____
Date

SK 25217 0006 1391360

Document comparison done by DeltaView on Thursday, June 20, 2013 2:50:40 PM

| Input: | |
|---|---|
| Document 1 | pcdocs://sknyc1/1391360/3 |
| Document 2 | pcdocs://sknyc1/1391360/4 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 13 |
| Deletions | 7 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 20 |

# Vertical Capital
### Investment Advisors

Vertical Capital, LLC
437 Madison Avenue
39th Floor
New York, NY 10022
212.786.5300 main
212.786.5301 fax

June 20, 2013

Ms. Miriam Freier
108 5th Avenue, Apt 7C
New York, New York  10011

Dear Miriam:

The purpose of this letter is to confirm our agreement (the "Agreement") with respect to the terms of your employment by Vertical Capital, LLC ("Vertical" or the "Company").  It is hereby agreed as follows:

1.  <u>Employment</u>.   Subject to the terms and conditions of this Agreement, the Company agrees to employ you and you agree to be employed by the Company commencing on or about August 5, 2013.  If you have not joined the Company by that date, this Agreement shall be null and void and of no further effect.  You shall be employed on an at-will basis, meaning that either you or the Company may terminate the employment relationship at any time, for any reason or no reason at all, subject only to the terms of this Agreement, including without limitation the Notice Period described in Section 6(a).

2.  <u>Title and Duties</u>.  You will have the title of director of Marketing & Investor Relations.  In that capacity you shall report to Brett Graham and Kem Blacker, Partners.  Your responsibilities will include, but not be limited to, capital raising, organizing/maintaining a plan and budget relating to capital raising activities, preparing marketing materials (i.e. presentations, one-pagers, and web site material) and preparing RFP responses.  During your employment you shall devote your full business time, attention, energy and best efforts to the business and affairs of the Company and any related funds, entities or companies and you shall not engage in any activity that is harmful to the business, reputation or best interests of the Company or any related funds or entities.  In addition, you agree to adhere to and abide by any and all Company policies and procedures, and all relevant federal, state and self-regulatory laws, rules and regulations, as may be in effect from time to time.

3.  <u>Compensation</u>. (a) <u>Base Salary</u>.  In consideration of your services, you will be paid a base salary at the rate of two hundred thousand U.S. dollars

Ms. Miriam Freier
June 20, 2013
Page 2 of 8

(US$200,000) annualized, payable in accordance with the Company's normal payroll practices, currently semi-monthly.

(b)  Discretionary Bonus.  You will be eligible to receive an annual discretionary bonus to be determined in the sole discretion of the Company.  Your receipt of any discretionary bonus for any calendar year is contingent upon your remaining in the active employ of the Company through the date that bonuses are paid in the normal course, generally not later than March 15 in the first quarter of the following calendar year, after the year-end close.  Provided you are in the active employ of the Company on the date bonuses are paid in the normal course (regardless of the reason for termination of employment), and have not given notice of your intent to resign, for calendar year 2013, your minimum discretionary bonus shall be $50,000.

(c)  Withholdings and Deductions.  All payments made under this Agreement by the Company shall be subject to all required federal, state and local withholdings and such deductions as you may instruct the Company to take.

4.  Benefits.  You will be eligible for employee benefits on the same basis as those benefits are made available to other employees in comparable positions. The Company currently offers group medical and dental coverage in addition to a 401k plan.  There is a mandatory thirty (30) day period before any employee is eligible for medical or dental benefits and a ninety (90) day waiting period for eligibility to participate in the 401k plan.

5.  Vacation.  You will be eligible for three (3) weeks of paid vacation days, pro-rated for any partial calendar year worked.

6.  Termination.  (a) You agree to provide at least thirty (30) days written notice in advance of resigning or retiring from the Company (the "Notice Period").  During the Notice Period, you will continue to be an employee of Vertical and shall remain subject to the terms of this Agreement, and all Vertical policies and procedures.  In no event may you perform services of any kind for any other employer during the Notice Period.  During the Notice Period, Vertical may, in its sole discretion, remove any duties assigned to you, assign you other duties (consistent with your experience), require you to remain away from Vertical's place of business, or waive some or all of the Notice Period and consider your resignation effective immediately, or on some date prior to the expiration of the Notice Period.  During the effective duration of the Notice Period, and provided that you continue to act in a manner consistent with your obligations as an employee of Vertical, you will continue to be paid at your then current base salary and remain eligible to participate in benefit plans for Vertical employees in comparable positions, but you shall not be entitled to any other payments of any kind, including any bonus compensation in Section 3(b) above.

(b)  If your employment is terminated with Cause (as defined herein) or you resign or give notice of your intent to resign from the Company, you will not be entitled to any further payments of any kind, except for base salary through the effective

Ms. Miriam Freier
June 20, 2013
Page 3 of 8

date of the termination of your employment.  "Cause" shall mean (i) willful or deliberate failure to perform your duties or gross negligence in the performance of your duties; (ii) material breach of the terms of, or representation included in, this Agreement; (iii) dishonesty, willful misconduct or fraud in connection with your employment by the Company, the performance of your duties or in any way related to the business of Vertical including, without limitation, with respect to any representations in this Agreement; (iv) a reportable violation of banking, securities or commodities laws, rules or regulations; (v) conviction or a plea of <u>nolo contendere</u> (or the equivalent) to a felony or any crime involving moral turpitude; (vi) engaging in conduct materially injurious to the business, reputation or goodwill of the Company or any of its affiliates; or (vii) violation of applicable policies, practices and standards of behavior.  The Company shall provide you with notice and an opportunity to cure in respect of any act or omission on your part that under (i), (ii) or (vii) it believes constitutes Cause for terminating your employment, provided that in the reasonable good faith judgment of the Company the particular act or omission is susceptible to cure.

(c)      If your employment is terminated by the Company without Cause, you will be entitled to receive your base salary through the effective date of the termination of your employment, but you will not be entitled to any further payments of any kind; provided, however, if such termination is on or after January 1, 2014**,** you will (i) receive payment of three (3) months of your then current base salary and (ii) be eligible for an additional amount that the Company may decide in its sole discretion, but you understand and acknowledge that the Company has no obligation to pay any such additional discretionary amount.  No payments upon termination of your employment without Cause will be made unless you execute and do not revoke a release in a form satisfactory to the Company and its counsel in favor of it and all related persons and entities from any and all claims relating to your employment or its termination and your continued compliance with the terms and obligations of this Agreement.

7.      <u>Confidential Information.</u>  During the course of your employment you will have access to and come into possession of information of a proprietary or confidential nature relating to the present or future business of the Company, and any affiliated or related entities or funds managed by the Company, as well as from clients or prospective clients of the Company (all of such information hereinafter referred to as "Confidential Information"), the improper use or disclosure of which may potentially violate federal or state law, and harm the Company.  In addition, the value of such information may be destroyed or seriously diminished by any such disclosure.  As such, you agree that at all times during and after your employment at the Company you will hold in the strictest confidence, and will not use, publish or disclose, or permit others to use, publish or disclose, any Confidential Information which you may have acquired by reason of, or in connection with, your employment with the Company.  Notwithstanding the foregoing, nothing herein shall prevent you from disclosing Confidential Information: (a) to the extent required by law provided that you shall immediately notify the Company prior to any such disclosure; (b) with the prior written consent of the Company; or (c) if

Ms. Miriam Freier
June 20, 2013
Page 4 of 8

such information becomes publicly available other than from disclosure by you or anyone acting in concert with you.

For purposes of this Agreement, "Confidential Information" includes, but is not limited to, financial and operational information and data regarding the Company, and its investment vehicles and strategies; client contact, account, and portfolio information; proprietary software, models, processes, discoveries, inventions, know-how, and the like; track record and account performance data; internal analyses, management information reports and worksheets such as marketing and business plans, profit margin studies and compensation; research and portfolio information; Company and fund accounting information, including financial statements of the Company and its affiliated entities; personal information pertaining to current and former employees and officers of the Company and its related entities; and personal and financial information pertaining to the principals of Vertical or their respective family members.

8.      Non-Solicitation.  As part of the consideration for the benefits and consideration paid to you under this Agreement, you agree that during the period of your employment (including any Notice Period), and for a period of twelve (12) months thereafter, you will not, without the prior written consent of the Company, directly or indirectly: (a) solicit any client, limited partner, shareholder or investor of or in any fund or account established or managed by Vertical or any affiliated or related entity (a "Client"), "Prospective Client" (as defined below) or former Client who was a Client within the twelve (12) months prior to your termination for employment; (b) encourage any Client or Prospective Client to turn down, terminate or reduce a business relationship with Vertical or any affiliated or related entity; (c) hire, solicit, recruit, induce, work with, procure or attempt to hire, solicit, recruit, induce or procure, directly or indirectly, any person who is an employee or member of Vertical or any affiliated or related entity and who was such an employee or member at any time during the final year of your employment; (d) assist in hiring any such person by any other individual, sole proprietorship, company, partnership, broker-dealer, investment adviser, investment company, hedge fund, bank, mutual fund or other enterprise; or (e) encourage any such person to terminate his or her employment or membership with Vertical or any affiliated or related entity.

For purposes of this Section 8, "Prospective Client" shall mean any person or entity that has received an offering memorandum or marketing materials, including, but not limited to any PowerPoint presentations, Word documents, monthly or quarterly letters, or similar marketing related correspondence with respect to Vertical or any affiliated or related entity, provided that, if such Prospective Client has not invested or signed any document indicating an intention to invest with Vertical (or any affiliated or related entity) within six (6) months following Employee's cessation from employment for any reason, such person or entity shall no longer be considered a Prospective Client.

9.      Non-Competition.  As part of the consideration for the benefits and consideration paid to you under this Agreement, you agree that during the period of your employment (including any Notice Period), and for a period of three (3) months

Ms. Miriam Freier
June 20, 2013
Page 5 of 8

thereafter, you will not, without the prior written consent of the Company, directly or indirectly, invest in or otherwise acquire an interest in, render any service or advice to or in connection with any person or managed account for, manage, become affiliated or associated with, operate or be employed in any capacity by any person, bank, investment bank, broker-dealer, firm, corporation, partnership, fund, limited liability company, business enterprise or other entity (whether as an employee, director, officer, partner, investor, advisor, consultant or otherwise) that (a) engages or plans to engage in asset management activities of the types engaged in or contemplated by the Company or any of its affiliates or investment vehicles during the course of your employment or (b) otherwise competes or plans to compete with the Company or any of its affiliates or related investment vehicles.

10.  Remedies.  You acknowledge and agree that your services are of a unique nature with broad access to Confidential Information including but not limited to client information, plans, strategies and methods of operations, and that as such, it is fair and reasonable in order to protect the good will, business, operations, assets and reputation of the Company that you make the covenants and undertakings set forth in Sections 6(a), 7, 8 and 9 of this Agreement.  Furthermore, you agree that if you breach or attempt to breach or violate any of the foregoing provisions, the Company will be irreparably harmed and monetary damages will not provide an adequate remedy. Accordingly, it is agreed that the Company may apply for and shall be entitled to temporary, preliminary and permanent injunctive relief (without the necessity of posting a bond or other security) in order to prevent breach of this Agreement or to specifically enforce the provisions thereof, and you hereby consent to the granting of such relief.  The Company shall not have to prove the inadequacy of the available remedies at law or actual damages.  It is understood that any such injunctive remedy shall not be exclusive or waive any rights to seek other remedies at law or in equity.  The parties hereto further agree that the covenants and undertakings as set forth in this Agreement are reasonable in light of the facts as they exist on the date hereof.  However, if at any time, a court having jurisdiction over this Agreement shall determine that any of the subject matter or duration is unreasonable in any respect, it shall be reduced, and not terminated, as such court determines may be reasonable.

11.  Representations.  You represent and warrant that you are not in breach of any agreement requiring you to preserve the confidentiality of any information, client lists, trade secrets or other confidential information or any agreement not to compete, solicit clients or employees of, or interfere with, any prior employer, and that neither the execution of this Agreement nor the performance by you of your obligations hereunder will conflict with, result in a breach of, or constitute a default under, any agreement or policy to which you are a party or to which you may be subject, including any garden leave or notice requirement prior to resigning your prior employment.  You further represent that you have not taken and will not take any confidential information from any prior employer and will not use any such information in performing your obligations hereunder but instead will rely on your generalized knowledge and skill in performing your services hereunder.  You represent that: (a) you are not currently and

Ms. Miriam Freier
June 20, 2013
Page 6 of 8

have never been the subject of any investigation by any prior employer or a party in any securities-related or banking litigation or arbitration proceeding; (b) you are not the subject or target of any pending investigation, charge or complaint before a securities regulatory or self-regulatory organization, grand jury or any other forum; (c) you have never been fined, sanctioned or otherwise found to have violated any securities related regulation by any governmental agency or self-regulatory organization, whether or not such finding resulted in statutory disqualification; and (d) you have disclosed any material information to Vertical regarding your personal investments, professional affairs or any legal or regulatory matter of which you are aware that, if publicly disclosed hereafter, would adversely reflect on the business, reputation or goodwill of Vertical.

12.   Return of Company Property.   You agree to deliver to the Company promptly on termination of your employment, or at any other time upon request by the Company, all property and equipment of the Company of any kind in your possession including, but not limited to, computer equipment (hardware and software), identification cards, credit cards, cellular telephones, BlackBerry, iPhone or similar device, magnetic key cards and the like, in addition to any and all documents (however stored) related to the business of the Company.

13.   Notice.   All notices pursuant to this Agreement shall be in writing delivered by hand to the other party or via a recognized overnight delivery service (e.g., FedEx), addressed as follows:

|  |  |
|---|---|
| If to you: | At the address set forth on page 1 |
| If to the Company | Vertical Capital, LLC |
|  | 437 Madison Avenue, 39th Floor |
|  | New York, New York  10022 |
|  | Attn.: Kem Blacker, Partner |

or to such other address as either party shall have furnished to the other in writing in accordance herewith.  Notice shall be effective when delivered by hand or the business day following the date when placed in the custody of a recognized overnight courier service for next day business delivery, properly addressed.

14.   Governing Law.   This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to principles of conflicts of laws.  If any dispute should arise concerning this Agreement, the interpretation of this Agreement or otherwise relating in any way to the terms and conditions of your employment, including any statutory claim of discrimination, the parties agree to submit the dispute to arbitration before a panel of three (3) neutral arbitrators at JAMS in New York, New York pursuant to JAMS' Comprehensive Arbitration Rules and Procedures.  Each party shall bear its own costs in connection with an arbitration under this paragraph 14.  For injunctive relief, it is agreed that any court of competent jurisdiction may also entertain an application by either party.  The parties further agree that no demand for punitive damages shall be made in any arbitration

Ms. Miriam Freier
June 20, 2013
Page 7 of 8

proceeding.  Any award of the arbitrators shall be final and binding, subject only to such right of review that may lie under applicable federal or state law.

15.  <u>No Waiver</u>.  No failure by either party at any time to give notice of any breach by the other party, or to require compliance with, any condition or provision of this Agreement shall be deemed a waiver of a similar or dissimilar provision or condition at the time or at any prior or subsequent time.

16.  <u>Severability</u>.   In the event that any provision or term of this Agreement is held to be invalid, prohibited or unenforceable for any reason, such provision or term shall be deemed severed from this Agreement, without invalidating the remaining provisions, which shall remain in full force and effect.  If at any time a court or other body having jurisdiction over this Agreement shall determine that any of the subject matter or duration is unreasonable in any respect, it shall be reduced and not terminated, as such court or body determines may be reasonable.

17.  <u>Non-Disclosure</u>.  You agree to keep this Agreement confidential and not disclose its terms to any third parties unless required to do so by law or regulation, without the prior written consent of the Company.  You may, however, disclose the details of your employment and compensation arrangements to your immediate family and to your tax, accounting and legal advisors, provided that you secure the agreement of such individuals to maintain the confidentiality of this Agreement; and you may disclose your obligations to Vertical as set forth in Sections 6(a), 7, 8 and 9 to any potential future employer or business partner.

18.  <u>Work Eligibility</u>.  This Agreement is contingent upon proof of your eligibility to work in the United States and a satisfactory background check.

19.  <u>Assignment</u>.   This Agreement and all rights and obligations hereunder shall be binding upon and shall inure to the benefit of your heirs, executors, representatives and administrators and any successors in interest which may acquire or succeed to all or substantially all of the business and assets of the Company by any means or its assigns.  Because of the personal nature of the services to be rendered by you, you may not assign your rights or obligations under this Agreement, without the prior written consent of the Company.

20.  <u>Entire Agreement</u>.  This  Agreement  contains  the  entire understanding between the parties on the subjects covered here and supersedes all prior agreements, arrangements and understandings, whether written or oral, regarding the subjects covered here.  You acknowledge that you have not relied on any statements, representations or promises not specifically contained in this Agreement.  This Agreement may not be changed, or any of its provisions waived, orally, but only in writing signed by both parties.

Ms. Miriam Freier
June 20, 2013
Page 8 of 8

       Kindly indicate your acceptance of this Agreement by signing and returning a copy of this Agreement to the undersigned by June 21, 2013.  If a signed Agreement is not received by the undersigned as of this date, this Agreement and all terms thereof shall be null and void in its entirety.

       Very truly yours,

       VERTICAL CAPITAL, LLC


       By: _____
             Kem Blacker
             Partner



ACCEPTED AND AGREED TO:

_____
Miriam Freier

_____
Date

SK 25217 0006 1391360